IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DOVE DATA PRODUCTS, INC., | ) | Civil Action No.: 4-05-CV-72-25 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **WRITTEN OPINION AND ORDER** |
| | ) | |
| BRIAN MURRAY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

In this employment-related case, plaintiff Dove Data Products, Inc. ("Dove") alleges multiple causes of action against its former employee, defendant Brian Murray ("Murray"). In relevant part, Dove alleges that Murray breached a restrictive employment agreement entered into between the parties during his employment with the company.

This matter now comes before the Court upon Dove's filing of a motion for preliminary injunction. (Doc. # 9). According to Dove, it is entitled to a preliminary injunction prohibiting Murray from violating the parties' restrictive employment agreement, soliciting Dove's customers, and appropriating and using Dove's alleged trade secrets. Murray opposes this motion.[1]

---

[1] Also presently pending before the Court is the plaintiff's motion to strike the affidavit of Chris Peebles, the former Regional Manager of Dove (Doc. # 41). This affidavit was filed by Murray in opposition to the plaintiff's motion for a preliminary injunction. According to Dove, the Peebles affidavit is improper, redundant, impertinent, immaterial, and prejudicial. The Court cannot reach such a conclusion at this time. Therefore, at this stage in the legal proceedings, plaintiff's motion to strike the affidavit of Chris Peebles is **DENIED** (Doc. # 41). The undersigned shall afford the Peebles affidavit whatever weight deemed appropriate, if any.

1

On November 21, 2005, and January 26, 2006, hearings were conducted before the undersigned relating to the above-referenced motion. At that time, testimony was presented and the parties were provided with the opportunity to argue their respective legal positions. Plaintiff's motion for a preliminary injunction is now ripe for disposition.

As the record reflects, on or about December 8, 2000, nearly nineteen (19) months after Murray initially became employed by Dove, the parties signed a written employment agreement.[2] Importantly, Section 5 of that agreement, which was entitled "Covenant Not to Compete" contained a provision providing that:

> (a) The Employee covenants that he will not at any time during his employment by the Company or within a period of two years after the termination of his employment with or without cause:
>
> > (1) for himself or any other person or entity, directly or indirectly, within the Territory, engage in the business of selling, soliciting, or taking orders for computer printer, facsimile machine, and copier supplies, including toner and ink products, in competition with the business of the Company...

This agreement provision provides the genesis for plaintiff's claims.

Following Murray's separation from the company on July 16, 2004, Dove alleges that Murray sold, solicited, and took orders in violation of this agreement. As a result thereof, the instant action followed. Subsequently, Dove filed the pending motion for a preliminary injunction.

---

[2] A previous employment agreement was signed by the plaintiff at the time he began employment with the plaintiff. However, that agreement is not relevant to the analysis of the issues presently before the Court.

A preliminary injunction is "an extraordinary remedy...to be applied only in the limited circumstances which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802 (4th Cir. 1991). In determining whether to grant preliminary relief, the Fourth Circuit Court of Appeals has identified four factors which are to be considered. Id. (citing Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 195 (4th Cir. 1977)). First, the party requesting preliminary relief must make a "clear showing" that he will suffer irreparable harm if the court denies his request. Id. at 812-13. Second, if the party establishes irreparable harm, "the next step then for the Court to take is to balance the likelihood of irreparable harm to the plaintiff from the failure to grant interim relief against the likelihood of harm to the defendant from the grant of such relief." Id. at 812. Third, if the balance tips decidedly in favor of the party requesting preliminary relief, "a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." Id. at 813. However, "if the balance does not tip decidedly, there must be a strong probability of success on the merits." Id. Fourth, the court must evaluate whether the public interest favors granting preliminary relief. Id.

The most important factors are the potential harm to the plaintiff and the potential harm to the defendant. Hughes Network Sys., Inc. v. InterDigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994). The required irreparable harm "must be neither remote nor speculative, but actual and imminent." Direx, 952 F.2d at 812. If the plaintiff succeeds in making a clear showing that irreparable harm will result without injunctive relief, the Court must then balance the likelihood of that harm against the likelihood of harm to the defendant

3

if the injunction is granted. Id. If the balance "tips decidedly in favor of the plaintiff," a preliminary injunction will be granted if the plaintiff raises substantial questions as to the merits of the underlying case. Id.

Consequently, there is a correlation between the likelihood of the plaintiff's success on the merits and the probability of irreparable harm to the plaintiff. "If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction." North Carolina State Ports Authority v. Dart Containerline Co., Ltd., 592 F.2d 749, 750 (4th Cir. 1979); *See also* Rockford Mfg., Ltd. v. Bennet, 296 F. Supp.2d 681 (D.S.C. 2003) (explaining that if the likelihood of success on the merits is great, the need for showing irreparable harm decreases proportionately).

In this case, the plaintiff asserts that it will suffer "irreparable injury" if an injunction is not granted, since defendant "is actually and actively soliciting Dove Data's customers in violation of the no-solicitation agreement." (Plaintiff Memo p. 3).

Importantly, testimony elicited in this case indicated that the primary customer allegedly wrongfully solicited by the defendant was "HCA." However, the defendant also presented testimony indicating that HCA would not have remained a customer of Dove subsequent to his employ with Dove. Thus, at least arguably, at this time, no irreparable damage has occurred or will occur in the immediate future. Again, while the plaintiff strongly asserts that it will suffer irreparable harm if an injunction is not granted, conflicting evidence has been presented in this regard.

Based upon this conflicting evidence, the Court cannot conclude, at this time, that the balance of harm tips decidedly in the plaintiff's favor. As a result, the burden on the plaintiff to establish a likelihood of success on the merits becomes considerably greater. See Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 817 (4th Cir. 1991). Plaintiff must demonstrate that there is a " strong probability of success on the merits." Id. at 813.

Next, plaintiff asserts that there is a strong probability that it will succeed in enforcing the restricting employment agreement at issue. While numerous courts have upheld the validity of restrictive employment agreements, this Court notes that restrictive covenants not to compete or solicit have been generally disfavored by others and will be strictly construed against the employer. Rockford, 296 F. Supp.2d at 687. Similarly, a restrictive employment agreement's enforceability depends on whether it:

(1) is necessary for the protection of the legitimate interest of the employer;

(2) is reasonably limited in its operation with respect to time and place;

(3) is not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood;

(4) is reasonable from the standpoint of sound public policy; and

(5) is supported by valuable consideration.

Id. (citing Sermons v. Caine & Estes Insurance Agency, Inc., 275 S.C. 506, 273 S.E.2d 338 (1980) and Rental Uniform Service of Florence, Inc. v. Dudley, 278 S.C. 674, 301 S.E.2d 142, 143 (1983)).

This Court notes that it has long been established by the South Carolina courts that the "most important single asset of most businesses is their stock of customers." Id. As well, protection of this asset against appropriation by an employee is recognized as a legitimate

interest of the employer. Id. (citing Standard Register Co. v. Kerrigan, 238 S.C. 54, 119 S.E.2d 533 (1961)).

In this case, conflicting evidence has been presented by the parties as to whether irreparable injury to the plaintiff has or will occur necessitating the granting of an injunction. As noted, the defendant presented testimony indicating that HCA would not have remained a customer of Dove subsequent to his employment with them. Under such circumstances, this Court cannot conclude that the enforcement of the agreement, at this stage of the proceedings, is necessary for the protection of the employer. While the plaintiff certainly should have the opportunity to protect its "stock of customers," to enforce the agreement at this time could result in the enforcement of an agreement which arguably does not protect the plaintiff, since HCA may not have remained a customer of the plaintiff.

Next, the Court must consider whether the agreement is reasonably limited in its operation with respect to time and place. A review of the covenants at issue in this case reveals generally that they are for a two year duration. In this regard, covenants of comparable duration have been regularly upheld as reasonable by the courts. See, e.g., Standard Register Co. v. Kerrigan, 238 S.C. 54, 119 S.E.2d 533 (1961) (two year covenant) and Rental Uniform Service of Florence, Inc. v. Dudley, 278 S.C. 674, 301 S.E.2d 142, 143 (1983) (three year covenant).

Moreover, the agreement at issue also appears to impose both client and employee-based restrictions and geographical restrictions. While "the general test is that contractual prohibitions must be geographically limited to what is reasonably necessary to protect the employer's business...[p]rohibitions against contacting existing customers can be a valid

substitute for a geographic limitation." Caine & Estes Ins. Agency, Inc. v. Watts, 278 S.C. 207, 293 S.E.2d 859 (1982); Oxman v. Profitt, 241 S.C. 28, 126 S.E.2d 852 (1962); Wolf v. Colonial Life and Acc. Ins. Co., 309 S.C. 100, 420 S.E.2d 217, 222 (1992).

Based upon this Court's review of the agreement, the Court concludes, at this time, that that the plaintiff may also in fact demonstrate that the agreement is properly tailored and not overbroad. Specifically, the agreement appears to be reasonably limited in its operation with respect to time and place. Case law supports this position. See, e.g., Standard Register Co. v. Kerrigan, 238 S.C. 54, 119 S.E.2d 533 (1961) and Rental Uniform Service of Florence, Inc. v. Dudley, 278 S.C. 674, 301 S.E.2d 142, 143 (1983). As well, in Standard Register Co. v. Kerrigan, the South Carolina Supreme Court held that a restrictive employment agreement, whose language was similar to the agreement at issue in this case and which was limited in duration to two years after Kerrigan's leaving of employment, was reasonable. In so doing, the Supreme Court noted that:

> The two year limitation has been held to be reasonable in a number of cases. These are collected in an annotation in 41 A.L.R.2d beginning at page 179, to which reference is here had. *See also* Delmar Studios of the Carolinas v. Kinsey, 233 S.C. 313, 104 S.E. 2d 338, which directs attention to several North Carolina cases on the subject. In this case the restriction of two years is no more than was necessary to afford a fair protection to the [employer,] and it was not oppressive to Kerrigan.

Id., 119 S.E.2d at 542.

Furthermore, the Court must consider whether the restrictive employment agreement is unduly harsh on the former employee defendant's ability to earn a livelihood. According to the plaintiff, there is little likelihood of harm to the defendant if this Court were to enter an injunction, since Dove "is only asking the Court to prohibit Defendant from soliciting

7

Dove Data's customers with whom defendant dealt while Dove Data employed and paid defendant." (Plaintiff Memo. p. 5). In contrast, the defendant argues that any injunction "would cause him and his family severe financial hardship." (Defendant Amended Memo. p. 2). As well, the defendant argues that this alleged hardship has been compounded by the effects of Hurricane Katrina on the Gulf Region, and especially New Orleans, the territory assigned to the defendant. (Defendant Amended Memo. p. 2).

As noted, plaintiff is seeking an injunction prohibiting defendant from soliciting or selling products primarily to HCA, an account it may not have continued to service or maintain subsequent to the defendant's employ. Enforcement of the restrictive employment agreement could be considered unduly harsh if plaintiff has suffered or would suffer no injury. Conversely, if such an agreement were deemed valid, an argument could certainly be made that the agreement is not unduly harsh.  If the restrictive employment agreement is valid, the loss to the defendant is simply a consequence of its enforcement. Conflicting evidence has been presented on this issue. Based upon the record presently existing, the undersigned cannot conclude whether or not the agreement is unduly harsh. Additional development of the facts is necessary before a conclusion can be reached on this question.

Finally, the defendant argues that the restrictive employment agreement is not enforceable because it is not supported by valuable consideration. The South Carolina Supreme Court has stated that "a covenant not to compete may be enforced where the consideration is based solely upon the at-will employment itself." Riedman Corporation v. Jarosh, 290 S.C. 252, 349 S.E.2d 404, 404 (1986). However, "when a covenant is entered into after the inception of employment, separate consideration, in addition to continued

at-will employment, is necessary in order for the covenant to be enforceable." <u>Poole v. Incentives Unlimited, Inc.</u>, 345 S.C. 378, 548 S.E.2d 207, 209 (2001).

As the record reflects, the parties have submitted conflicting evidence as to whether the restrictive agreement at issue is supported by valuable consideration and/or that additional consideration is necessary for enforcement of that agreement. In particular, the defendant asserts that he was not provided with any additional consideration subsequent to his signing of the agreement. The plaintiff argues otherwise. The resolution of this question may be the issue that resolves this case.

This Court allowed the parties to offer testimony and present argument regarding the issue of consideration. Based upon the limited testimony presented, this Court is not prepared to make a determination whether consideration does or does not exist for the second restrictive employment agreement entered into between the parties. This issue may be resolved as a matter of law by the Court or may be resolved by a jury and simply is not yet ripe for final resolution at this time.

Based upon the conflicting evidence presented, the undersigned concludes that the plaintiff has not demonstrated a strong probability of success on the merits of its claims, at this time, involving the restrictive employment agreement at issue and whether the second restrictive employment agreement is supported by consideration. As well, because the plaintiff's remaining claims for misappropriation of trade secrets, breach of an employment agreement, intentional interference with contract, breach of the duty of loyalty, interference with prospective contractual relations and unfair trade practices also stem from the restrictive employment agreement at issue, the undersigned concludes that the plaintiff has not

demonstrated a strong probability of success on the merits of these claims at this stage.

In sum, based upon the conflicting evidence presented to the Court and the uncertainty of the consideration question, it cannot be concluded that the plaintiff has demonstrated a strong probability of success on the merits of its claims at this time. Therefore, plaintiff's motion for a preliminary injunction is **DENIED** (Doc. #9).

**IT IS SO ORDERED.**


s/ Terry L. Wooten
**TERRY L. WOOTEN**
**UNITED STATES DISTRICT COURT JUDGE**


February 23, 2006
Florence, South Carolina